IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| MARC HARRIS,<br><br>           Plaintiff,<br><br>    v.<br><br>COMMONWEALTH OF VIRGINIA, et al.,<br><br>           Defendants. | Civil Action Number 3:07CV701 |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on a Motion to Dismiss (**Dkt. No. 3**) filed by Defendant Commonwealth of Virginia ("Commonwealth"); a Motion for Summary Judgment (**Dkt. No. 8**) filed by Defendants M. Haynes, W. Chatham, T. Russell, R. Wagner, C. Neale (erroneously identified in the Complaint as "Neele"), and A. Reese; and a Motion for Leave to Amend Complaint (**Dkt. No. 17**) filed by Plaintiff Marc Harris. As all parties have agreed to the dismissal of the Commonwealth from this suit, the Commonwealth's Motion to Dismiss shall be GRANTED. For the reasons expressed below, the Court shall GRANT in part and DENY in part the remaining Defendants' Motion for Summary Judgment and Plaintiff's Motion for Leave to Amend Complaint.

**I.**

On or about June 4, 2006, Harris was incarcerated at Northern Neck Regional Jail ("NNRJ") as a pretrial detainee. Harris alleges that on that date a physical altercation ensued between him and several of the correctional officers at NNRJ. In sum, Harris claims that the correctional officers pushed him down a stairwell, across the floor, and ultimately into a wall. As a result of the

1

altercation, Harris sustained a fracture to his right wrist.

Harris further alleges that he remained in a holding cell for approximately forty-five minutes before medical care was rendered. A nurse placed Harris' wrist in a splint. Although Harris wrote several requests for an x-ray, he did not receive one until June 13, 2006. Harris was diagnosed with two fractures of the bones in his right wrist. On June 27, 2006, Dr. Reese examined Harris for the first time and informed him that his wrist should be placed in a cast and that he needed to see an orthopedic specialist. Although he made repeated requests, Harris asserts that he was never referred to an orthopedic doctor and no cast was ever placed on his broken wrist.

The NNRJ provides an administrative grievance procedure for prisoner complaints. NNRJ's Inmate Handbook ("Handbook") outlines a three-step process for inmates to follow. As an initial step, inmates are encouraged to resolve their complaints through an Informal Resolution Procedure, which entails discussing the problem with an employee directly by submitting an Inmate Request Form.[1] If the inmate is unsatisfied, he may proceed with the formal grievance procedure. The Formal Resolution Procedures requires an inmate to submit a written complaint describing, in pertinent part, "[t]he attitude or behavior of an employee or other inmate toward the complainant, which is perceived to be unjustified or unreasonable." (Frederick's Aff., Ex. 1 at 18.) Once a complaint is logged, it is forwarded to the Department Head, who will conduct an investigation and respond in writing to the inmate within seven working days.

If the inmate does not feel that the response he received from the Department Head was adequate, he may appeal to the Assistant Superintendent within eight calendar days of the date of

---

[1]The Inmate Request Form specifically states: "This is not a grievance form." (Pl.'s Aff., Ex. 1.)

the original response from the Department Head. The Assistant Superintendent will conduct an additional investigation of the complaint, if necessary, and will provide a written response to the Classification Officer within seven working days to be delivered to the inmate. If unsatisfied with the Assistant Superintendent's response, an inmate may appeal to the Superintendent for reconsideration of the grievance. Appeals must be forwarded within eight working days of the date appearing on the Chief of Inmate Service's response. The Superintendent shall route the written response back to the Classification Officer within seven working days to be delivered to the inmate.

The records submitted by the Defendants and Harris demonstrate that prior to filing the instant Complaint, Harris submitted twelve Informal Requests and one formal grievance on June 16, 2006, complaining about the medical care he was receiving for his wrist. (Pl.'s Aff. ¶¶ 4, 8; see also Frederick's Aff. ¶6.) Major Hull, the Assistant Superintendent at the Jail, responded to Harris' formal Grievance on June 21, 2006, noting that Harris was receiving proper medical attention. (Frederick's Aff., Ex. 7.) Unsatisfied with Major Hull's response, Harris requested to appeal. Id.

The Defendants have submitted two affidavits from Paula Frederick, the Grievance Coordinator for the NNRJ, attaching all of the grievances Harris filed during his stay at NNRJ. In paragraph six of the first affidavit, she attests that Harris was sent an appeal form on July 7, 2006. (Frederick's Aff. ¶ 6.) However, in paragraph seven of the first affidavit, Frederick states that Harris "was provided a copy of the appropriate appeal form on July 7, 2007." (Frederick's Aff. ¶ 7.) Further, in paragraph six of Frederick's second affidavit, she avers that "Harris was provided with an final appeal form on September 7, 2006." (Frederick's Second Aff.¶ 6.)

Harris, on the other hand, states that he never received any such appeal form. (Pl.'s Aff. ¶ 7.) Additionally, Harris attests that he filed a formal grievance with Major Hull regarding the

3

aforementioned altercation, and he never received a response. (Pl.'s Aff. ¶ 3.) The Defendants' records show no such filing. (Frederick's Aff.¶ 6.)

Harris filed suit on November 9, 2007, against correctional officers Haynes, Chatham, Russell, Wagner; Nurse Neale; Dr. Reese; four John and Jane Does; and the Commonwealth as employer of the aforementioned defendants. Harris alleges that the Defendants violated his constitutional civil rights pursuant to 42 U.S.C. §1983 by use of excessive force (Count One), cruel and unusual punishment (Count Two), and gross negligence in hiring and retention (Count Six). Harris also asserted the following state law claims: assault and battery (Count Three); grossly negligent hiring and retention (Count Four); and gross negligence (Count Five). Presently, the Commonwealth has filed a Motion to Dismiss and the remaining Defendants filed a Motion for Summary Judgment. Shortly thereafter, Harris filed a Motion to Amend Complaint.

Because Harris concedes that the Commonwealth is immune from suit and agrees to the dismissal of the Commonwealth, the Court focuses on the issues raised in the remaining Defendants' Motion for Summary Judgment and Plaintiff's Motion to Amend Complaint.

## II.

### A.

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986). The Court must view the facts and the inferences drawn therefrom in the light most favorable to the non-moving party. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1004 (4th Cir. 1987). While viewing the facts in such a manner, courts look to the affidavits or other specific facts to determine whether a

triable issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327. "Where no genuine issue of material fact exists," it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted).

The Defendants' Motion for Summary Judgment presents two issues for the Court to resolve (1) whether Harris' § 1983 civil rights claims are barred by his failure to exhaust available administrative remedies and (2) whether Harris' state law claims are barred by Va. Code § 8.01-243.2's one-year period of limitations.

**B.**

The Defendants argue that Harris' civil rights claims (Counts One, Two, and Six) pursuant to 42 U.S.C. § 1983 are barred by his failure to exhaust available administrative remedies. The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The availability of administrative remedies to a prisoner is a question of law." Ray v. Kertes, 285 F.3d 287, 291 (3d Cir. 2002) (citing Snider v. Melindez, 199 F.3d 108, 113-14 (2d Cir.1999)). Section 1997e(a) "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Congress enacted § 1997e(a) "to reduce the quantity and improve the quality of prisoner suits . . . [and to

afford] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Id. at 524-25; see also Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004). Thus, it is well established that regardless of the relief offered through administrative procedures, "exhaustion is mandatory under the PRLA and that unexhausted claims cannot be brought in court." Jones v. Bock, 127 S. Ct. 910, 918-19 (2007); accord Booth v. Churner, 532 U.S. 731, 741 (2001).

An inmate's failure to exhaust under the PLRA is an affirmative defense, not a jurisdictional prerequisite. Jones, 127 S. Ct. at 921. As such, prison officials bear the burden of pleading and proving that the inmate had available remedies which he did not exhaust. See id. "It is the prison's requirements, and not the PRLA that define the boundaries of proper exhaustion" and the level of detail necessary for a particular grievance to comply with the grievance procedure outlined by the prison. Id. at 923. Proper exhaustion, therefore, "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2386 (2006).

Nonetheless, courts have recognized that the PLRA's exhaustion requirement is subject to certain limitations and exceptions. Defendants may forfeit the affirmative defense of non-exhaustion by failing to raise or preserve it. Abney, 380 F.3d at 667. Additionally, an inmate is only required to exhaust administrative remedies that are "available" to him. § 1997e(a). Defendants, therefore, may be estopped from raising non-exhaustion as an affirmative defense "where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking administrative remedies." Abney, 380 F.3d at 667; accord Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)

(holding that "a remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a)").

**1.**

The Defendants contend that Harris failed to file any grievance related to his excessive force claim (Count One). In opposition, Harris first argues that he was not provided with written grievance procedures when he was initially incarcerated. The Court, however, finds that Harris' assertion that he was unaware of the grievance process incredulous based on Harris' use of the process and the records the Defendants have submitted showing that Harris signed on at least eight different occasions affirming that he received a copy of the Handbook. See Meanor v. Wilcox, 241 F. App'x 856, 858 (3d Cir. 2007) (finding that the inmate's excuse for failing to exhaust administrative remedies, i.e., that he never received a copy of the prison's handbook, lacked credibility where it was apparent that the inmate knew how to use the prison administrative system to file a complaint).

Next Harris contends that he filed a formal grievance regarding his excessive force claim with Major Hull, and it was never addressed. However, neither the grievance records submitted by the Defendants nor the Informal Requests submitted by Harris show that Harris ever filed any complaint about the altercation that occurred on June 4, 2006. Thus, given that the record is devoid of any grievance or Informal Request relating to Harris' excessive force claim, the Court finds that Harris failed to exhaust his administrative remedies with respect to Count One. See Moore v. Bennette, 517 F.3d 717, 729 (4th Cir. 2008) (concluding that the prisoner failed to exhaust his administrative remedies regarding his gout claim because he did nothing to alert the prison officials that he had an additional medical condition, and allowing him to bring suit would undermine the

purposes behind the exhaustion requirement); see also  Wall v. Major, 2008 WL 893138, at *6 (D. S.C. Mar. 28, 2008) (finding that the defendant demonstrated that the plaintiff failed to exhaust his administrative remedies where none of the grievances filed by the plaintiff were related to the claims raised in his Complaint).

**2.**

Although the Defendants concede that Harris submitted several Informal Requests and one Grievance related to his medical care, they argue that Harris failed to exhaust his available administrative remedies because he did not appeal to the Superintendent as required by NNRJ's grievance procedure. Therefore, the Defendants urge the Court to dismiss Counts Two[2] and Six[3] of Harris' Complaint. Harris, on the other hand, contends that he never received the appeal form.

It is undisputed that Harris submitted twelve Informal Requests and a formal grievance with respect to his medical care. The record further demonstrates that Harris requested to appeal the decision resulting from his formal grievance on or about June 21, 2006. The parties, however, dispute whether Harris ever received an appeal form. The Defendants have submitted two affidavits from the grievance coordinator for the NNRJ. In her first affidavit, Frederick avers that Harris was sent an appeal form on July 7, 2006 in paragraph six and July 7, 2007 in paragraph seven.

---

[2]In Count Two, Harris asserts a claim for cruel and unusual punishment, alleging that the Defendants acted with deliberate indifference to Harris' health and safety when they placed him in a holding cell rather than transporting him to a hospital emergency room for medical care. Harris further alleges that Nurse Neale acted with deliberate indifference when she failed to place a cast on Harris' wrist as opposed to a temporary splint, and so did Dr. Reese when he failed to refer Harris to an orthopedic specialist.

[3]In Count Six, Harris alleges that the prison officials and supervisory personnel negligently hired and retained correctional officers and medical personnel who failed to ensure that prisoners in their custody received timely medical care.

(Frederick's Aff. ¶¶ 6-7.) In her second affidavit, Ms. Frederick states that Harris was provided with an appeal form on September 7, 2006. (Frederick's Second Aff.¶ 6.) Harris, on the other hand, consistently attests that he never received an appeal form and the records he submitted shows that he continued to submit Informal Requests through July 18, 2006. (Pl.'s Aff. ¶ 7.)

If Harris never received the forms to file his appeal, then he was unable to avail himself of further administrative procedures through no fault of his own. Accordingly, because the affidavits presented by the Defendants are inconsistent and two of the dates provided by the Defendants are months after Harris requested an appeal form, the Court finds that the Defendants have not demonstrated that Harris failed to exhaust his administrative remedies with respect to his medical care and, therefore, Counts Two and Six of his Complaint shall not be dismissed. See Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (joining the Eighth and Fifth Circuits in holding that administrative remedies are deemed exhausted when prison officials fail to timely respond to inmate grievances because those remedies become "unavailable"); see also McManus v. Schilling, 2008 WL 682577, at *8 (E.D. Va. Mar. 7, 2008) (holding that the defendants did not prove that the inmate plaintiff failed to exhaust where plaintiff alleged that he did not receive the defendants' response to his Level I complaint until after the deadline expired for him to appeal the decision); Collins v. Goord, 438 F. Supp. 2d 399, 414-15 (S.D. N.Y. 2006) (concluding that summary judgment in favor of prison officials was precluded where a genuine issue of material fact existed as to whether the officials actively obstructed the inmate's ability to properly file a prison grievance concerning the destruction of his typewriter).

**C.**

Defendants next argue that Harris' state law claims- assault and battery (Count Three),

grossly negligent hiring and retention (Count Four), and gross negligence (Count Five) - are barred by Va. Code § 8.01-243.2's one-year period of limitations. The Court agrees.[4]

Section 8.01-243.2 provides, in pertinent part, that "[n]o person confined in a state or local correctional facility shall bring or have brought on his behalf any personal action . . . within one year after cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later." § 8.01-243.2. In Billups v. Carter, 604 S.E.2d 414 (Va. 2004), the Virginia Supreme Court held that while §1983 claims are subject to a two-year period of limitations pursuant to VA Code § 8.01-243(A), common-law assault and battery claims are governed by § 8.01-243.2. Id. at 419.

Harris attempts to argue that Ogunde v. Commonwealth, 628 S.E.2d 370 (Va. 2006), implicitly overruled Billups. In Ogunde, an inmate brought an action against the Commonwealth under Virginia's Tort Claims Act ("Act"), Code §§ 8.01-195.1 to 195.9. The issue was whether the Act's or § 8.01-243.2's statute of limitations was applicable. Ogunde, 628 S.E.2d at 371-72. The Virginia Supreme Court held that the Act's statute of limitations applied. Id. at 373. The court reasoned that while the inmate statute covers all classes of litigation- not just tort, the Act is narrower and only applies to one type of litigation - "tort actions against the Commonwealth." Id. Because the Virginia Supreme Court explicitly limited the Act's statute of limitations to tort actions against the Commonwealth, Billups did not overrule Ogunde and the Court finds the Virginia Supreme Court's holding in Billups is applicable to the facts of instant case. Accordingly, Harris'

---

[4]The Defendants also assert that Harris failed to exhaust his administrative remedies with respect to his state law claims. Because the Court concludes that Harris' state law claims are subject to Va. Code § 8.01-243.2's one-year statute of limitations and Harris failed to file his claims within that requisite time frame, it is unnecessary for the Court to address the Defendants' exhaustion argument with respect to Counts Three, Four, and Five.

state law claims are subject to § 8.01-243.2's one-year period of limitations.

In Virginia, the cause of action accrues and the statute of limitations begins running "from the date the injury is sustained in the case of injury to the person or damage to property." Va. Code § 8.01-230.  In the present case, Harris' claims for assault and battery (Count Three) and failure to supervise and train the John Doe defendants (Count Four) began to run on June 4, 2006, the date Harris sustained the injury to his wrist.  Harris' gross negligence with respect to medical care claim (Count Five) began to accrue at the latest on July 18, 2006, the last date Harris submitted request forms seeking medical care. Harris filed his Complaint on November 9, 2007, which is several months after the one-year statute of limitations expired.[5]  Accordingly, the Court finds that Harris' state law claims are barred by the one-year period of limitations prescribed in § 8.01-243.2.

### III.

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend a complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a). Therefore, the Fourth Circuit has admonished that leave to amend a complaint should be denied "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir.1999) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir.1986)) (internal quotation marks omitted); accord Davis v. North Carolina, 180 F. Supp. 2d 774, 776-77 (E.D. N.C. 2001) (permitting the plaintiffs to add defendants in their official capacity to avoid a fatal defect in their complaint).

In the instant case, Harris seeks to amend his Complaint for the purposes of (1) omitting any

---

[5] Section 8.01-243.2's one-year period is applied because it is later than 6 months after any possible date the Court could find that Harris exhausted his claims.

claim against the Commonwealth; and (2) adding the following supervisory persons and entities of NNRJ: Ted Hull, Assistant Superintendent of the NNRJ; Jeffrey Frazier, Superintendent of the NNRJ; and the NNRJ Board Authority.  Finding that there has been no bad faith on the part of Harris, and that no prejudice would result to the Defendants, the Court shall GRANT in part and DENY in part Harris' Motion to Amend.  Harris may amend his motion to omit claims against the Commonwealth and add the proposed defendants.  However, because the proposed Amended Complaint still contains a claim for use of excessive force and state law claims barred by § 8.01-243.2's period of limitations, Harris may not file his Amended Complaint as proposed.  Instead, the Court shall grant Harris leave to amend his Complaint in accordance with this Memorandum Opinion.

### IV.

For the reasons stated above, the Court shall GRANT in part and DENY in part the Defendants' Motion for Summary Judgment and Plaintiff's Motion for Leave to Amend Complaint.  Additionally, the Court shall GRANT Defendant Commonwealth's Motion to Dismiss.

An appropriate Order shall issue.

|  |
|---|
| _____/s/_____<br>James R. Spencer<br>Chief United States District Judge |

Entered this   23rd   day of April 2008