

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

MARC HARRIS,

                           Plaintiff,

    v.

COMMONWEALTH OF VIRGINIA, et al.,

                      Defendants.

Action No. 3:07CV701

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion for Judgment on the Pleadings by defendants M. Haynes, W. Chatham, T. Russell, R. Wagner, C. Neale (erroneously identified in the Complaint as "Neele"), and A. Reese. For the reasons expressed below, the Court GRANTS in part and DENIES in part the Motion.

## I. BACKGROUND

On about June 4, 2006, Harris was incarcerated at Northern Neck Regional Jail ("NNRJ"), awaiting trial. On that date, Harris alleges, he was involved in an altercation with several of the correctional officers at NNRJ. He claims that the correctional officers pushed him down a stairwell, across the floor, and into a wall. As a result of the alleged altercation, Harris sustained a fracture to his right wrist.

In addition, Harris alleges that he was placed in a holding cell for approximately forty-five minutes before he received medical care from Nurse Neale, who placed Harris' wrist in a splint. Although Harris submitted several written requests for an x-ray, he did not receive one until June 13, 2006 – nine days after his injury. The x-ray revealed two fractures of the bones in

1

Harris's right wrist. On June 27, 2006, twenty-three days after his injury, Harris was examined for the first time by a physician, Dr. Reese, who informed Harris that his wrist should be placed in a cast and that he needed to see an orthopedic specialist. But, Harris alleges that his wrist was never placed in a cast and that, even though he asked for a referral to see an orthopedic specialist, he was never referred to one.

Consequently, Harris filed suit on November 9, 2007 against four correctional officers, Chatham, Haynes, Russell, and Wagner; Nurse Neale; Dr. Reese; four anonymous defendants; and the Commonwealth of Virginia, the employer of the individual defendants. Harris alleged several violations of the Fourteenth Amendment of the United States Constitution, 42 U.S.C § 1983, and state law. But, on February 29, 2008, the Commonwealth of Virginia was dismissed from the suit under the Eleventh Amendment. And, the Court subsequently dismissed one of Harris's § 1983 claims because he failed to exhaust his administrative remedies, and dismissed his state-law claims because they were barred by the applicable statute of limitation, Virginia Code § 8.01-243.2. See Harris v. Commonwealth, No. 3:07–CV–701 (E.D. Va. Apr. 24, 2008).

The Court permitted Harris to amend his complaint to name the NNRJ Board Authority; Jeffrey Frazier, Superintendent of the NNRJ; and Ted Hull, Assistant Superintended of the NNRJ, as defendants. Harris did so.[1] Thus, the claims pending in this case are that (Count One) the defendants (with the exception of the NNRJ Board Authority) inflicted cruel and unusual punishment on Harris by failing to adequately care for his injuries, violating the Eighth and Fourteenth Amendments; and (Count Two) the anonymous defendants and the NNRJ supervisors breached the duty that they owed to Harris to protect his safety and health by negligently hiring

---

[1] The supervisory personnel have not yet been served.

and retaining correctional officers and medical staff.

The correctional officers and medical personnel filed the Motion for Judgment on the Pleadings, claiming that (1) Count One of the Amended Complaint fails to state a claim for deliberate indifference against them; and (2) none of the allegations in Count Two of the Amended Complaint assert a claim against them.[2]

## II. STANDARD OF REVIEW

"After pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is governed by the same standard as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). Under Rule 12(b)(6), a motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a claim, not the facts supporting it. Conley v. Gibson, 355 U.S. 41, 45–46 (1957); see Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). Thus, in ruling on a Rule 12(b)(6) motion, a court must regard as true all of the factual allegations in the complaint, Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007), as well as any facts that could be proved that are consistent with those allegations. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and view those facts in the light most favorable to the plaintiff, Christopher v. Harbury, 536 U.S. 403, 406 (2002). But, since the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests," the plaintiff must allege facts that show that its claim is plausible, not merely speculative. Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964, 1966 (2007); see

---

[2] Since Count Two charges only the supervisory defendants, who have not been served, the Court's Memorandum Opinion does not address the claim(s) raised in Count Two.

Fed. R. Civ. P. 8(a)(2).  The court does not have to accept legal conclusions that are couched as factual allegations.  Bell Atl. Corp., 127 S.Ct. at 1964, or "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000).  But, the plaintiff does not have to show that it is likely to obtain relief: if the complaint alleges – directly or indirectly – each of the elements of "some viable legal theory," the plaintiff should be given the opportunity to prove that claim.  Bell Atl. Corp., 127 S.Ct. at 1969 & n.8.

Generally, in deciding a Rule 12(c) motion, a court may not review any documents other than the complaint.  But, the court may consider official public records, documents that are central to the plaintiff's claim, and documents quoted or incorporated by reference in the plaintiff's complaint, provided that their authenticity is not disputed.  See Witthohn v. Federal Ins. Co., 164 F. App'x 395, 396 (4th Cir. 2006); Gasner v. County of Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995).

### III.  DISCUSSION

A claim of inadequate medical care by a person in detention prior to trial arises under the Fourteenth Amendment and is governed by the "deliberate indifference" standard first applied by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104–05 (1976) to a claim by a convicted prisoner under the Eighth Amendment claim that prison officials failed to provide him with adequate medical care.  See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) (observing that the Fourteenth Amendment rights of pre-trial detainees "are at least as great as the Eighth Amendment protections available to a convicted prisoner"); see also Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001) (holding that the "deliberate indifference" standard applies,

4

regardless of whether a plaintiff was a pretrial detainee or a convicted prisoner). Under that standard, a plaintiff must allege that (1) he was deprived of medical care in a "objectively, sufficiently serious" way and (2) the prison official possessed "a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The objective component of an inadequate medical care claim is satisfied by a sufficiently serious medical condition or need. See Estelle, 429 U.S. at 105; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). A medical need is sufficiently serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Webb v. Hamidullah, 2008 WL 2337608, at *5 (4th Cir. Feb. 1, 2008).

The subjective component is satisfied by showing deliberate indifference by prison officials. See id. Mere negligence, inadvertent failure to provide adequate medical care, or medical malpractice are not enough to constitute "deliberate indifference." Farmer, 511 U.S. at 835; Estelle, 429 U.S. at 105–06. Nor does a prisoner's disagreement with medical personnel over the course of his treatment support a cognizable claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Instead, "[p]rison officials evince deliberate indifference to a serious medical need by completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to adequate medical care." Hicks v. James, 255 F. App'x 744, 749 (4th Cir. 2007). As such, "deliberate indifference may be demonstrated by actual intent or reckless disregard." Id.

5

Furthermore, "deliberate indifference"[3] occurs due to delay in the treatment of a serious medical condition only if the delay results in some substantial harm to the patient.  Webb, 2008 WL 2337608, at 6–7; see also Kane v. Hargis, 987 F.2d 1005 (4th Cir. 1993) (affirming a grant of summary judgment in a case in the petitioner was in custody and unable to seek medical attention for four hours despite having suffered cracked teeth, a cut nose, and a bruised face); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (holding that a pretrial detainee's rights under the Fourteenth Amendment were not violated, even though he was not allowed to see a doctor during fourteen hours of interrogation, despite having a cut over one eye and having a piece of glass imbedded in his palm). The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005).

A.     The Correctional Officers

The defendants argue that Harris's only allegation against correctional officers Haynes, Chatham, Russell and Wagner concerns a forty-five minute delay in administering medical care to Harris. They claim that, since Harris did not allege that the forty-five minute delay exacerbated his injury, Count One should be dismissed for failure to state a claim. Harris responds that, regarding his allegations in the light most favorable to him and drawing reasonable inferences from them, the Amended Complaint establishes that the delay in medical treatment exacerbated Harris' injury.

The United States Supreme Court recently addressed this issue in Erickson v. Pardus, 127

---

[3] The Court incorporates Eighth Amendment jurisprudence because the same standard of "deliberate indifference" is applied to Fourteenth Amendment cases involving pretrial detainees.

6

S. Ct. 2197 (2007).  In <u>Erickson</u>, a prisoner alleged that a prison physician had stopped giving him hepatitis C treatment in violation of department protocol, endangering his life. <u>Id.</u> at 2199. The prisoner also attached grievance forms to his complaint, in which he asserted that he was suffering from "continued damage to his liver" as a result of the physician's decision. <u>Id.</u> The district court dismissed the complaint on the ground that it failed to allege that the physician's actions caused the prisoner substantial harm, and the Court of Appeals for the Tenth Circuit affirmed, stating that the prisoner made "only conclusory allegations ... that he has suffered a cognizable independent harm as a result of his removal from the [hepatitis C] treatment program" and had failed to "allege that as a result of the discontinuance of the treatment itself shortly after it began or the interruption of treatment for approximately eighteen months he suffered any harm, let alone substantial harm, [other] than what he already faced from the hepatitis C itself." <u>Id.</u> (internal quotation marks omitted).

The Supreme Court vacated the decision, holding that the prisoner's allegation that terminating the treatment endangered his life and that he still needed treatment for the disease was sufficient to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." <u>Id.</u> at 2200.  Quoting <u>Bell Atlantic v. Twombly</u>, 127 S. Ct. 1955 (2007), the Court explained that "specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Id.</u> (internal quotation marks omitted).

The Court's holding in <u>Erickson</u> is directly applicable to this case.  Although the Amended Complaint fails to directly allege substantial harm, it states that Harris suffered great pain.  Specifically, the Amended Complaint states that the correctional officers "put handcuffs on

7

Marc Harris['s] wrists as tight as the cuffs would go while Marc Harris cried out in pain from the handcuff crushing his broken wrist. Marc Harris['s] wrist began to swell and he asked the Defendants to loosen his cuffs." (Am. Comp. ¶ 24.) The Amended Complaint then alleges that the correctional officer defendants subsequently placed Harris "in a holding cell and remained their [sic] for 45 minute before medical care was rendered." (Am. Comp. ¶ 23.) Consequently, Harris alleged that he suffered weakness, limited mobility, inability to bear weight, and severe pain from his elbow to his wrist. (Am. Comp. ¶ 42.) Those allegations, construed in the light most favorable to Harris, support an inference that the defendants, while Harris was in excruciating pain, ignored his pleas for a significant period of time before attempting to alleviate his suffering. Thus, those allegations are sufficient to provide the defendants with fair notice that Harris is alleging substantial harm.

B.    The Medical Personnel

The medical staff contends that Harris merely alleges that he disagreed with the medical treatment he received from Nurse Neale and Dr. Reese. The defendants cite portions of the Amended Complaint in which Harris states that he should have had a cast rather than a temporary splint wrapped with an ace bandage, or that he should have been transported to an emergency room for treatment (Am. Comp. ¶ 34), or that he should have been seen by an orthopedic surgeon (Am. Comp. ¶ 37.). Harris, on the other hand, argues that (1) his medical condition, a fractured wrist, was objectively sufficiently serious and (2) the medical professionals failed to take appropriate action despite being aware of that condition.

1.    Nurse Neale

Harris alleges that Nurse Neale observed a lump approximately one and a quarter inches

8

high on Harris' wrist, and that Harris could not flex his wrist or move his fingers. Nurse Neale examined Harris on July 4, 2006 at 2:00 p.m. and placed the wrist in a splint. Harris further alleges that Nurse Neale did not schedule an x-ray until nine days later and did not make arrangements for Harris to be seen by Dr. Reese for twenty-three days. Consequently, by June 28, 2006, Harris states that he had two affected bones in his wrist – instead of just one fractured bone.

Viewing the facts in the light most favorable to Harris and drawing reasonable inferences from those allegations, the Court finds that a fractured wrist is a serious injury and that Nurse Neale's delay in scheduling an x-ray and a visit with a physician could have exacerbated Harris' injuries. See Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978) (ruling that a broken arm "can be an excruciating injury," noting that few people would voluntarily wait "even eleven hours" to seek care, and finding that a delay of less than one day in treating the injury supported an inference of deliberate indifference); see also Hunt v. Uphoff, 199 F.3d 1220, 1223–24 (10th Cir. 1999) (explaining that the fact that a petitioner received some medical care does not preclude him from claiming under the Eighth Amendment that he did not receive adequate medical care).

Additionally, the Amended Complaint also charges that Nurse Neale told Harris that he would have to pay for an x-ray of his wrist (Am. Comp. ¶ 33), implying that the nine-day delay in adequate medical care was due to the cost of the treatment (See Am. Comp. ¶ 36). "While inmates are entitled to adequate medical care under the Eighth Amendment, they are not entitled to the best and most expensive form of treatment." Taylor v. Barnett, 105 F. Supp. 2d 483, 489 n.2 (E.D. Va. 2000). Thus, the Eighth Amendment does not prohibit prison officials from considering cost when they determining a course of treatment, as long as the treatment does not

place the inmate at risk of serious injury and the decision was not made with deliberate indifference. Id. Nonetheless, it is unacceptable for prison officials to make health care decisions "solely upon cost considerations without any medical rationale." Id. Here, Harris' allegation that Nurse Neale's decision was motivated primarily by considerations of cost is sufficient to allow his claim to proceed. See id.

 2.  Dr. Reese

Harris alleges that when Dr. Reese first examined Harris' wrist and x-rays, he recommended an examination by an orthopedic specialist and the placement of Harris's wrist in a cast. But, Dr. Reese never referred him to an orthopedic specialist or placed his wrist in a cast. Thus, Harris alleges that Dr. Reese changed his course of treatment. But, it is well established that "[n]either a misdiagnosis alone nor a disagreement with a doctor's chosen course of medical treatment makes out a claim of deliberate indifference." Coppage v. Mann, 906 F. Supp. 1025, 1040 (E.D. Va.1995) (citing Wester v. Jones, 554 F.2d 1285, 1286 (4th Cir.1977); see Estelle, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Accordingly, the Court concludes that Harris fails to state a claim against Dr. Reese.

IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part the Motion for Judgment on the Pleadings.

An appropriate order shall be issued.

10

_/s/_
James R. Spencer
Chief United States District Judge

Entered this _5th_ day of September 2008

11